(52 South. 991.)

No. 17,920.

INTERSTATE LAND CO., Limited, v. DOYLE et al.

(June 6, 1910. On Application for Rehearing, June 25, 1910.)

*(Syllabus by Editorial Staff.)*

1. Co-Owners—Rights and Liabilities of Co-Owners—Expenses—Insurance.

An owner of an undivided interest in real estate, who insures the property in his own name and for his own account, and not on behalf of the infant co-owner, is not entitled to the sum paid for the insurance on the distribution of the proceeds of the property on a sale for partition.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 97, 98; Dec. Dig. § 32.*]

2. Co-Owners—Rights and Liabilities of Co-Owners—Taxes.

One having an undivided interest in real estate who buys the entire property at a tax sale for state taxes is entitled to 10 per cent. interest on the price bid by him on the property, and an infant co-owner is properly charged with that amount in the distribution of the proceeds in partition proceedings.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 96; Dec. Dig. § 30.*]

3. Co-Owners—Rights and Liabilities of Co-Owners—Taxes.

Where one having an undivided interest in real estate had in his hands funds belonging to the co-owners, he must, when paying taxes on the property apply the funds pro tanto to the payment of the co-owners' taxes, and he could not hold claims against the co-owners as interest-bearing claims, based on his payment of taxes, while he had funds of the co-owners which it could impute to their payment.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 106; Dec. Dig. § 37.*]

4. Co-Owners—Rights and Liabilities of Co-Owners — Expenses — Collection of Rents.

Where one having an undivided interest in real estate employed a third person to collect the rents, the co-owners claiming the moneys collected by the third person should pay a reasonable amount due for collection.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 97; Dec. Dig. § 32.*]

Breaux, C. J., and Nicholls and Provosty, JJ., dissenting in part.

Appeal from Civil District Court, Parish of Orleans; George H. Theard, Judge.

Action by the Interstate Land Company, Limited, against Willie Doyle and another, minors. From a judgment granting insufficient relief, plaintiff appeals. Modified and affirmed.

Richardson & Soule, for appellant. Benjamin Ory, for appellees.

NICHOLLS, J. The judgment rendered herein was preceded by the following opinion of the trial judge, assigning his reasons for the same. The statement of the facts of the case are, we understand, accepted as correct as far as it goes:

The project of partition prepared by the notary public appointed by the court herein is opposed both by the plaintiff and defendants on various grounds to be hereinafter stated. In order to properly determine the issue involved, the following facts must be borne in mind: The property in suit was owned by James J. Sylvester and the defendants, in the proportions of one undivided half for the former, and one undivided fourth for each of the latter. In July, 1900, plaintiff acquired $31/100$ of said property at a tax sale for the state tax of 1899, paying therefor the sum of $41.25. In June, 1901, plaintiff bought the whole of said property at a tax sale for the state taxes of 1900, paying therefor $76.71. In November, 1902, plaintiff brought suit to be recognized as owner of the said property under the aforesaid tax title, and prayed for a writ of possession which was issued, but was not sought to be executed until November 25, 1904, when it was enjoined on the petition of Thomas J. Sylvester, acting for himself and the minors Doyle. On the same day, plaintiff obtained, with the consent of defendants, a judicial sequestration of the property, and afterwards, from December 22, 1904, to July 2, 1905, the sheriff, under a written agreement of the parties, collected the rents through Mr. F. Rivers Richardson, who was to account to him monthly. The compensation of Richardson was fixed at 20 per cent. of the collection. On June 16, 1905, judgment was rendered in favor of the plaintiff, recognizing it as the owner of the whole property. There was no suspensive appeal from

this judgment, and on July 2, 1905, plaintiff entered into full possession of the property.

The rents collected by F. Rivers Richardson from December 22, 1904, to May 31, 1905, inclusive, amounted to $471.40. From this he deducted his commission and sundry disbursements totaling $151.75, and turned over to the sheriff $319.65. Out of this, the sheriff retained for costs, etc., the sum of $40.55, leaving $279.30, as the net amount of rents for the time stated. For the month of June, 1905, Richardson collected $81.25, which he did not pay over to the sheriff, but out of which he was entitled to retain for his commission, etc., the sum of $43.85, making the net amount of rent for June, 1905, $37.40. From July 1, 1905, to May 31, 1907, inclusive, plaintiff, the Interstate Land Company, Limited, collected through its agent, F. Rivers Richardson, the rents of the property to the amount of $2,243. Richardson charged and received commission of 20 per cent. thereon, or $448.60.

On May 30, 1906, the minors Doyle appealed devolutively from the judgment of June 16, 1905, and the Supreme Court, on March 4, 1907, finally reversed the said judgment as to them, and recognized them as owners of an undivided half of the property in question. 118 La. 587 [43 South. 173].

On April 12, 1907, the present partition suit was begun, the property was again judicially sequestered, and whilst so sequestered from June to October, 1907, yielded revenues collected by the sheriff to the net amount of $114.-72. Judgment of partition was rendered on August 19, 1907, and the property was sold under it in due course on October 3, 1907, to plaintiff for the price of $10,800. In the judgment of partition it was ordered that defendants' reconventional demand for an accounting of rents and revenues and plaintiff's demand for reimbursement of taxes, etc., be referred to the partition before the notary named by the court for determination and adjustment.

In defendants' reconventional demand, plaintiff was called upon for an accounting from July 2, 1905. The price of the property ($10,-800) less the costs of sale, and the $114 of the net revenues collected by the sheriff from June to October, 1907, have been partitioned by consent. The

### Active Mass

| For partition herein, therefore, consists of the revenues of the property from July 2, 1905, the date fixed in the pleadings, to the date of the issuance of the second judicial sequestration. They are the rents collected by plaintiff through Richardson, agent, as above stated, amounting to.... | $2,243 00 |
| To this must be added the amount received by plaintiff from the sheriff as representing the net revenues of the property when it was first sequestered... | 279 30 |
| And the net amount collected for June, 1905, by Richardson for account of the sheriff and not accounted for to him but to plaintiff................................ | 37 40 |
| Thus making an active mass of........... | $2,559 70 |

From this must be deducted the following

### Debts and Liabilities:

| (1) The costs paid by plaintiff in the present action ............................... | $ | 39 95 |
| (2) The fees of the notary for the inventory herein ........................... (The property consisted of three portions of ground and an inventory was necessary.) | | 20 00 |
| (3) The fees of the appraisers and experts ...................................... | | 20 00 |
| (4) The cost of the act of partition...... (Objections to these two last items have been withdrawn.) | | 20 00 |
| (5) The costs paid by Benjamin Ory, as itemized under the numbers 3, 4, 5, 6, 8, 9, and 10, of law charges in the projet of partition, aggregating ................. | | 85 15 |
| | $ | 185 10 |
| | | $2,374 40 |

(6) All further costs incurred or to be incurred, by either plaintiff or defendants in these proceedings.

The balance remaining after said deductions is to go one-half to plaintiff and one-fourth to each of the defendants, subject to the hereinafter stated deductions from the share of the latter.

From the 2d day of July, 1905, when it went into possession of the property until the day when the judicial sequestration in this case was issued, plaintiff expended on the property the sum of $387.52, as shown by Exhibit B, annexed to the supplemental answer to the rule herein. Those expenditures include $30 for three years' premiums of insurance. As the policy was taken in the name of plaintiff, and it alone could have recovered any loss thereunder, defendant cannot be made to reimburse the premiums as having been benefited thereby. Conrad v. Burbank, 25 La. Ann. 112. The other expenditures ($357.52) were necessary to preserve the property and keep it in a tenantable condition. Defendant cannot claim the benefit of the rent, and at the same time refuse to be bound for the expenditures without which the property would have remained tenantless (Sharp v. Zeller, 114 La. Ann. 549–555 [38 South. 449]; Conrad v. Burbank, ubi supra).

Defendants are chargeable with their half thereof, say $178.76.

Plaintiff also claims the reimbursement of $449.70 (should be $448.60) paid by it as commissions to Richardson for collecting the rents and attending to the property from July 2, 1905, until the second judicial sequestration. It points to the agreement during the first judicial sequestration as showing the necessity for the employment of an agent for the collection of the rents and as justifying the unusual commission of 20 per cent. It also shows that under the agreement referred to the property produced greater monthly revenues, pending the first judicial sequestration, than pending the second judicial sequestration with the sheriff, as collector.

To defeat this claim. defendants rely upon the cases of Sharp v. Zeller and Conrad v. Burbank, above cited, which announce the doctrine that a co-owner who collects the rents of the common property cannot charge a commission, in the absence of an express agreement on the subject. It is contended that the agreement between the parties ended with the taking of possession by plaintiff under the judgment of June 16, 1905, and was never renewed. Strictly, that might be true, but it seems to me that the agreement was meant to endure until the question of ownership was finally settled. Had the judgment of June 16th been suspensively appealed from, the agreement would have continued in force pending the appeal. Because defendants appealed only devolutively is no reason to place plaintiff in duriori casu. Its situation should be the same as if the judicial sequestration and the agreement had been maintained during the appeal. It paid the commission in good faith relying upon said agreement as admitting the necessity for the employment of some one to collect the revenue. The tenants were unreliable negroes to the number of 25 or 30, and the rents had to be collected weekly in sums at times as small as 25 cents. Neither plaintiff nor the legal representatives of the defendants (had he had the opportunity) could reasonably be expected to assume such a task gratuitously. Defendants must therefore bear their half of the commission paid to Richardson, or $224.30.

Plaintiff next claims for reimbursement of one-half of the price of the property involved, and of sundry state and city taxes paid by it prior to the judgment of the Supreme Court of March, 1907, which it contends annulled as to defendants' half interest the interest at the rate of 10 per cent. per annum from the date of each disbursement. It relied on provision of article 233 of the Constitution of 1898 to the effect that "No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent. per annum interest on the amount of the price and taxes paid from date of respective payments be previously paid to purchaser."

Defendants deny that the tax sales referred to were annulled by the Supreme Court, and assert that plaintiff's right of ownership rests exclusively upon the first sale of July, 1900; that the second sale of June, 1901, added nothing to plaintiff's ownership; and that the price then paid and all subsequent payments of taxes must be considered as payments for the joint benefit of the co-owners, entitling plaintiff to reimbursement as negotiorum gestor, and nothing more. The issue is not difficult of solution.

The judgment of the Supreme Court does not in terms annul either of the sales in question. It simply rejects the demand of plaintiff "in so far as the interest of the minors, Joseph and Willie Doyle in the real estate here in dispute is concerned," which means that as to the said interest or one undivided half of the property, plaintiff has taken nothing by the tax sales.

In its opinion (at page 593 [118 La., at page 173, 43 South.]), the court declines to discuss whether the validity of the second sale of June, 1901, was affected by the fact that plaintiff was at that time a co-owner with defendants under the first sale of July, 1900, and leaves the question open. The decision is made to rest entirely upon the want of proper notice to the defendants and the consequent failure to reach their interest in the property.

How it can be claimed that the first adjudication was annulled to any extent, I fail to perceive. By it plaintiff acquired only $39/100$ of the property. Now, as the share of T. J. Sylvester, one of the co-owners, was $50/100$, or one-half, and as the adjudication in so far as his said share was concerned was valid there is no reason to decree its nullity in any respect. All that the Supreme Court decided was that defendants' one-half share was not affected by it. The adjudication of July, 1900, therefore stands as plaintiff's title to $39/100$ of the property, and plaintiff cannot pretend to be reimbursed by defendants for any part of the price.

It follows that being a joint owner with defendants, and as such interested in the payment of the taxes, plaintiff could not allow the common property to go to sale for the nonpayment of subsequent taxes, and bid it in with a view to acquiring its co-owners' share therein. The second adjudication of June 24, 1901, add d nothing to plaintiff's ownership (quoad defendants at least), and the price thereof was nothing more than an advance made by it to them for the extinguishment of a common debt. The same is true of all disbursements for taxes shown to have been made by plaintiff. On said disbursements no more than legal interest can be allowed.

Defendants are therefore liable for one-half of the following amounts with 5 per cent. per annum interest from the respective dates of payment until October 3, 1907, the day of the sale of the property under the judgment of partition herein:

| | |
|---|---|
| Amount paid under adjudication of June 24, 1901, for | |
| State taxes of 1900 | $ 46 71 |
| City taxes of 1905, paid August 18, 1905 | 83 60 |
| State taxes of 1905, paid December 29, 1905 | 25 80 |
| City taxes of 1906, paid August 21, 1906 | 88 00 |
| State taxes of 1906, paid December 29, 1906 | 24 00 |
| State taxes of 1901, paid June 13, 1902 | 38 40 |
| City taxes of 1899, paid July 13, 1902 | 113 35 |
| City taxes of 1900, paid May 14, 1903 | 107 06 |
| City taxes of 1901, 1902, 1903, paid April 28, 1904 | 299 20 |
| City taxes of 1904, paid November 15, 1904 | 85 50 |
| State taxes of 1904, paid November 15, 1904 | 26 60 |
| State taxes of 1887, paid November 15, 1904 | 22 80 |
| | $941 02 |

Plaintiff also claims that defendants should be charged with $200 rent for the occupancy of the property. That claim is unfounded. The property was occupied by T. J. Sylvester, and not by defendant, who merely resided with him. It was Sylvester whom plaintiff ruled into court to deliver possession after it acquired the

property at the partition sale, and it was from Sylvester that it accepted delivery. It is bound by its judicial declarations on the subject.

The claim of Ben Ory, attorney, against defendant for attorney's fees and costs, being Nos. 1, 2, 7, and 11 of the law charges and fees in the projet of partition, as well as his further claim urged by way of opposition for attorney's fees in the sum of $2,608.20, are properly matters for settlement between him and the legal representatives of defendants upon accounting before the court having jurisdiction of the latter's estate. Due reservation to that effect will be made.

It is therefore ordered, adjudged, and decreed that the projet of partition herein prepared by Gus. Rouen, notary public, and filed on February 5, 1909, be amended—

First. By limiting the active mass to the rents and revenues collected by plaintiff from July 2, 1905, to May 31, 1907, and amounting to $2,559.70.

Second. By charging said mass the following debts and liabilities:

(a) Costs paid by plaintiff in the present action ................................... $ 39 95
(b) Fee of notary for the inventory herein 20 00
(c) Fees of the appraisers and experts...... 20 00
(d) Costs of the act of partition........... 20 00
(e) Costs paid by Benjamin Ory as itemized under Nos. 3, 4, 5, 6, 8, 9, and 10 of law charges and fees projet of partition...... 82 15
(f) All further costs incurred or to be incurred by either plaintiff or defendants in these proceedings.

Third. By charging to defendants:

(g) As their half of the necessary expenditures made by plaintiff on the property... 178 76
(h) As their half of the commission paid by plaintiff to F. Rivers Richardson...... 224 30
(i) One-half of the following disbursements for state and city taxes with 5 per cent. per annum interest from the date of each disbursement until October 3, 1907:
Amount paid under adjudication of June 24, 1901, for
State taxes of 1900......................... 46 71
City taxes of 1905, paid August 18, 1905...... 83 60
State taxes of 1905, paid December 29, 1905.. 25 80
City taxes of 1906, paid August 21, 1906...... 88 00
State taxes of 1906, paid December 29, 1906.. 24 00
State taxes of 1901, paid June 13, 1902...... 36 40
City taxes of 1899, paid July 31, 1902........ 113 35
City taxes of 1900, paid May 14, 1903........ 107 06
City taxes of 1901, 1902, 1903, paid April 28, 1904 ....................................... 299 20
City taxes of 1904, paid November 15, 1904.. 85 50
State taxes of 1904, paid November 15, 1904.. 26 60
State taxes of 1887, paid November 15, 1904., 22 80

Fourth. By striking out items Nos. 1, 2, 7, and 11 of the law charges and fees and by reserving said items and the further claim of Benjamin Ory for $2,608.20 for attorney's fees for adjudication by the court having jurisdiction of defendant's estate.

It is finally ordered, adjudged and decreed that the parties herein be referred to Bussiere Rouen, notary public, to complete the partition in accordance with this judgment.

The plaintiff moved for a new trial urging that the judgment was contrary to the law and the evidence in the following particulars:

(1) The item of $30 fire insurance charge paid should have been allowed as a proper charge against the mass. The insurance was effected November 25, 1905. At that time the court had decreed the entire property to belong to the plaintiff, and it of course insured it in its name alone. It was not until nearly a year afterwards that a devolutive appeal was taken from the judgment which was reversed only (final decree entered) on March 4, 1907, and this decree made executory in the district court some time after that. During all this period the minors had a full protection by such insurance, and the debt having been created in good faith, and in the name that it should have been insured in at the time, it is but just that they should contribute one-half to the expenditures made. Had they taken a suspensive appeal the insurance would have been written for the joint account of the owners, but having taken a devolutive appeal the insurance was written in the name of the decreed owners.

(2) The court having failed to allow as a charge against the defendants the costs of the first adjudication made at tax sale of $41.25 (being the sale made for the state taxes of 1899), the tax on the property owned by the minors was discharged by this sale. Had no sale been made, and the tax had been paid, the court would have allowed it under its decision, as it did allow the other taxes paid.

The property having been relieved of an incumbrance against it, by the payment made and for which the defendants were jointly liable, they are clearly called upon to refund one-half of the costs paid.

The court allowed the plaintiff for the tax payment made, and the tax sales annulled pro tanto or held ineffective only legal interest instead of 10 per cent. per annum. It can-

not be disputed that a tax sale of the property was made or that such tax sale has been annulled, or held ineffective (which is the same thing), by the final judgment of the Supreme Court. Article 233 of the Constitution of 1898 provides:

"No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent. per annum interest on the amount of the price and taxes paid from date of respective payments be previously paid by the purchaser."

The amounts claimed and allowed by the court are certainly "the price and taxes paid," at the tax sale annulled by the Supreme Court. If part of the claim be recognized, then why not all? The court recognizes the claim, but refuses to enforce the express provisions of the Constitution as to the interest. The Constitution does not say interest, as the court allows but "ten per cent. per annum interest on the amount of the price and taxes paid from date of respective payments."

The court, we understand, bases this conclusion on the theory that the payment of these taxes was made by one who was a negotiorum gestor, as far as the defendants were concerned. The payments were made by one who was a co-owner, and who at the time was discharging its own debt, although at that time it thought it owned the entire debt and not the half only, and the court had so decreed. Had such co-owner desired only to pay its half of the taxes, undoubtedly it could not have done so, for the property was assessed as a whole, and the taxes had to be paid as a whole.

The theory is that when the plaintiff purchased $39/100$ interest in the property at the first tax sale it became the co-owner thereof and as such co-owner bound to pay the taxes on the property, and hence that it can have no benefit of the 10 per cent. clause in article 233 of the Constitution of 1898. Conceding the correctness of the position, for the sake of argument only, can such a doctrine apply to this case? The first tax sale was made August 20, 1900, and under the law could be redeemed until August 20, 1901; hence the purchase of the $39/100$ interest in the property was a defeasible purchase, one that could be defeated by redemption from the tax sale. The second sale of the whole property took place on June 24, 1901, before the redemption under the first tax sale had expired. The first sale was hence not an absolute purchase but an inchoate purchase (Moore v. Boagni, 111 La. 490, 35 South. 716, and State v. Register of Conveyances, 113 La. 93, 36 South. 900) and not being an absolute purchase the theory of joint tenancy has no application.

For these reasons, mover prays that a new trial be granted in the above-recited particulars only, and for general relief, and this application is submitted under the rules on the face of the papers.

The court overruled this application.

The plaintiff company has appealed.

Appellees have answered the appeal. Suggesting that the judgment appealed from is erroneous in the following respects:

(1) In allowing to plaintiffs and appellants commissions at the rate of 20 per cent. on the amount of rents collected by them from the property held in common after the judgment had become final and executory.

(2) In allowing interest to plaintiffs on the amount of taxes paid by them on the common property, and not allowing interest to defendants and appellees on the amount of rents due to them in accordance with article 3015 of the Civil Code.

They pray that said judgment of the district court be reversed or amended in that respect, but affirmed in every other particular; and that appellants be condemned to pay the costs incurred in both courts, and they pray for all general and equitable relief.

In the brief filed on behalf of appellees

·counsel say that in the reasons for judgment the recital of facts of the case are substantially correct, but some of the facts important to their side have not been explicitly brought out or sufficiently related to call the court's attention to them. That the ·omitted facts are:

First. That appellees have called upon the plaintiffs at three different times, for an ac·counting of the rents withheld by them (the plaintiffs), and each time the accounting was evaded by technical legal objections which have succeeded in causing the funds of the minors to remain in the hands of the plaintiffs, the Interstate Land Company, represented by Mr. F. Rivers Richardson as their attorney up to the present time. The first demand for an accounting was made on the 10th day of April, 1907, by rule filed in the civil district court in the suit entitled "Interstate Land Co., Ltd., Praying for Possession," after the decision of the Supreme Court reversing the judgment of the lower court now reported in 118 La. 587, 43 South. 173. The second demand for an accounting was filed in the lower court in the present ·suit in the reconventional demand of defendants on the 3d day of May, 1907, and finally it was urged by appellees in their ·opposition to the procès verbal of partition filed in the present suit in the lower court on the 13th day of April, 1909.

Second. That the wording of the stipulation made by counsel for plaintiff and defendants dated the 22d day of December, 1904, relative to the rents is not given by the court. This stipulation was as follows:

"December 22nd, 1904.
"In re Interstate Land Co., Praying for Possession.  No. 69,052, Civil District
        Court, Division C.

"On Injunction of Thomas J. Sylvester et al.

"In this matter it is agreed that the sheriff shall collect the revenues of the property judicially sequestered through F. Rivers Richardson, Esq., who shall turn over monthly to the sheriff the amount collected by him from said property less 20% thereof which shall be retained by the said Richardson in full compensation for his services in making said collections.    [Signed]   W. S. Hero,
    "Attorney for Plaintiffs in Injunction.
            "F. Rivers Richardson,
            "Atty. for Dft. in Injunction."

Third. The fact that at all times the defendants and appellees had a large credit in the hands of the plaintiffs resulting from rent collections, and no interest was allowed to the minors therefor by the lower court.

All the other important facts have been stated in the reasons for judgment, and we believe that the court will be able to understand thoroughly from the record the whole case as now presented before it and apply the law thereto.

The complaint made by appellant of the refusal of the trial court to permit the sum of $30 paid by it for insurance on the building is not well grounded. Plaintiff did not insure the property on behalf of the minors as negotiorum gestor, but in its own name for its own account. No legal duty was imposed on it to take out insurance for the benefit of the minors nor are we prepared to say that had the property so insured burned when insured under a policy so taken out by plaintiff, and the amount thereof been paid to it by the insurance company, that the minors could have recovered from it one-half of the insurance money so paid.

A majority of the court is of opinion that the trial court erred in refusing to allow appellant 10 per cent. interest on the price bid by it on the property, and in holding the minors liable only for interest at 5 per cent. and that the judgment appealed from should in that respect be amended. The CHIEF JUSTICE and the writer are of a different opinion, and think that the judgment on that subject is correct, and should remain undisturbed.

Appellees complain that the court erred in allowing the plaintiff interest on account of taxes paid by it on the common property, and not allowing them interest on the amount

of rents due to them. Plaintiff having in his hands funds belonging to the defendants should, when it paid the taxes, have applied those funds pro tanto to the payment of the defendant's taxes as they became demandable. It could not hold the claims it had against defendants as interest-bearing claims while it had funds of the defendants which it could impute to their payment.

The parties having mutual claim against each other, the settlement of the same was postponed to the final liquidation of the rights of the parties in partition.

We think appellees were properly charged with the amounts paid Mr. F. Rivers Richardson. The plaintiff does not charge commissions for collections and disbursements made by itself, but by a third person. The amounts charged were high, but the labors imposed upon Mr. Richardson were unusually burdensome. The plaintiff found it to its own interest to pay those amounts, and we think Mr. Richardson's services fully worth the amount claimed. Defendants are claiming the moneys collected by him, and they should pay what is shown to be the reasonable amount due for that collection.

For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by charging the appellees in favor of the appellant with interest at 10 per cent. instead of 5 per cent. on the price bid by it on the property at the second tax sale. Subject to this change and amendment, the judgment appealed from is affirmed.

PROVOSTY, J., dissents.

See dissenting opinion of NICHOLLS, J., in which the Chief Justice concurs, 52 South. 995.

### On Application for Rehearing.

LAND, J. It is ordered that our decree herein be amended and recast so as to read as follows, to wit:

For the reasons herein assigned it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by charging the appellees in favor of the appellant with interest at 10 per cent. instead of 5 per cent. on the price of the adjudication at the tax sale of June 24, 1901, and on all taxes paid on the property between said date and October 3, 1907; and that as thus amended the judgment appealed from is affirmed.

And it is further ordered that the defendant and appellee pay the cost of this appeal, and that with these amendments the application for a rehearing be refused.