AYRES, Judge.
Plaintiffs, by this action, seek to enforce payment of, and reimbursement by, defendant, their co-owner and co-lessor, of his proportionate share of the cost of alleged necessary repairs to the leased premises, an automobile storage garage located in the City of Alexandria.
In giving consideration to an exception of no cause of action, the trial court reached the conclusion that contribution for such repairs could not be exacted from a co-owner against his will. The exception was accordingly sustained and, from a judgment rejecting their demands, plaintiffs have appealed.
The legal proposition submitted for determination is whether or not, under the facts alleged, contribution may be required of the defendant for his share of the cost of repairs to the premises jointly owned by him and his three co-owners. Prerequisite to a consideration of the legal proposition involved is an examination of the factual situation, as disclosed by plaintiffs’ petition, inasmuch as an exception of no cause of action addresses itself to the sufficiency, in law, of the allegations of the petition. Spiers v. Davidson, 233 La. 239, 96 So.2d 502.
Therefore, the alleged facts, so far as material to the trial of the aforesaid exception, may be briefly summarized. Plaintiffs Sarah R. Keller and Esther T. Wake-man, allege they, together with Mrs. Lucy I. Thorsell, who is not a party to this action, and the defendant, James W. Thompson, own in indivisión a certain-described lot and the improvements-thereon, consisting of an automobile storage garage, in the proportion of an undivided one-fourth interest each; that said property is under lease by them to Weiss & Goldring, a department store, for use of its customers; and that the roof structure of the building became so weakened and dangerous by deterioration and sagging of the supporting wooden trusses as to require immediate repair or the installation of a new roof. The aforesaid condition was alleged to have been discovered by plaintiffs’ agent and a representative of the lessee, and confirmed by an inspection of the premises by a consulting engineer, who characterized the condition of the roof as “alarming” and recommended that repairs be made immediately or that an entire new roof structure be constructed.
From estimates received, ranging from $13,000, exclusive of cost of the removal of the old structure, to $30,000 including such removal, plaintiffs allegedly determined for themselves that the cost of the installation of a new roof structure was prohibitive; whereupon, they resolved that a proper course of procedure would be to repair the existing structure. Upon ascertaining that the deteriorated and weakened trusses could be replaced at a price of $128.-56 per truss, a controversy followed between plaintiffs and defendant as to the manner of making these repairs. Defendant insisted he could do the work with his own labor at less cost. This proposal was rejected by plaintiffs on the recommendation of the engineer, who was of the opinion defendant’s men were not qualified by training or experience to do this character of work. Thereafter, defendant refused to join his co-owners in the repairs contemplated. After considerable correspondence and discussion between plaintiffs’ representative and defendant, to no avail, plaintiffs contracted with A. A. Gre- *577 million & Co. to make the aforesaid repairs under the supervision of the engineer. The work was accordingly undertaken and pursued to its completion, and was thereafter approved and accepted by the engineer. The cost was $1,285.60. Mrs. Thorsell paid her portion; plaintiffs paid theirs and, on defendant’s refusal to pay, they also paid his share of $321.40. For this sum they seek reimbursement.
From the allegations of the petition, it clearly appears defendant fully recognized the necessity for the repairs, as alleged by plaintiff, or a new roof. With equal clarity, the petition discloses that the contract between plaintiffs and Gremillion was entered into and the work therein specified was performed not only without defendant’s authorization but without his consent.
It is a well-settled principle of law that, for the purpose of determining the issues presented by an exception of no cause of action, the well-pleaded facts contained in a petition must be accepted as true and that the petition must be considered in its entirety. Nor will such an exception be sustained if the allegations of fact disclose any basis or ground upon which the demand may be maintained. Spiers v. Davidson, supra; Oliver v. Shreveport Mun. Fire and Police, etc., La.App., 88 So.2d 405. In view of these principles, it may be pointed out that these facts clearly appear from plaintiffs’ petition; (1) That plaintiffs and defendant, together with Mrs. Thorsell, own the property concerned in indivisión; (2) that the property is under lease; (3) that the repairs were indispensable to the property’s preservation and to its continued use and occupancy by the lessee; and (4) that the cost of the repairs was just and reasonable.
From the fact that defendant contracted no obligation pursuant to the provisions of the Revised Civil Code treating “Of Conventional Obligations,” it does not necessarily follow he is not equally bound and obligated by other appropriate provi-sions of the code and principles of law. Plaintiffs and defendant, as well as their co-owner of the property involved, are bound from the very nature of their contract of lease with Weiss & Goldring, “ * * * and without any clause to that effect: * * * 2. To maintain the thing in a condition such as to serve for the use for which it is hired.,” (LSA-C.C. Art. 2692) and “ * * * to make, during the continuance of the lease, all the repairs which may accidentally become necessary; * * *” (LSA-C.C. Art. 2693). The maintenance of the roof of a leased building in such condition that the building will serve the use for which it was leased, during the continuance of the lease, is the obligation of the lessors. Leithman v. Vaught et al., 115 La. 249, 38 So. 982; Lirette v. Sharp et al., 44 So.2d 221; Piegts v. Palombo, La.App., 5 So.2d 563. Even though repairs be of the nature of those which are usually done by the lessee, “The expenses of the repairs, which unforeseen events or decay may render necessary, * * * ” are made at the expense of the lessor. LSA-C.C. Art. 2717.
The obligations of the lessors, under LSA-C.C. Arts. 2692, 2693, and 2717, pertaining to the repair and the maintenance of the leased premises, are, as regards the lessee, joint obligations, as LSA-C.C. Art. 2080 provides:
“When several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors.,”
and a lease executed by several lessors constitutes a joint lease and a joint obligation. A. Veeder Co., Inc., v. Pan American Production Co. et al., 205 La. 599, 17 So.2d 891; Nabors et al. v. Producers’ Oil Co., 140 La. 985, 74 So. 527, L.R.A.1917D, 1115. In the aforesaid cases, it was held that a mineral lease executed by several persons created an obligation joint and inseverable as to the obligees.
Where one of the two, or more, joint obligors has discharged a joint obli *578 gation, he is legally subrogated to all the rights against his co-obligors to the extent of their several proportionate shares. Subrogation is the substitution of one person or thing for another, as a new creditor for an old one, and “Subrogation takes place of right: * * * 3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.” LSA-C.C. Art. 2161.
Not only are the lessors under an obligation to maintain the leased premises in a condition to serve for the use for which it was intended, but they are liable in damages for their failure in that respect. LSA-C.C. Art. 2695. As owners of the premises, they are similarly liable in damages occasioned by its ruin through their failure or neglect to make the necessary repairs. LSA-C.C. Arts. 670 and 2322. We, therefore, conclude, and so hold, that plaintiffs’ petition discloses a cause of action.
It may be observed, however, that, on the trial of the merits, plaintiffs are under the compulsion of establishing the bases of their claim and, particularly, that the repairs were indispensable and that the price therefor was just and reasonable.
The conclusion reached makes it unnecessary to give specific consideration to, or to express an opinion as to, the merits of the other bases of plaintiffs’ claim, such as the alleged quasi contractual liability of the defendant under the provisions of that section of the Civil Code entitled “Of Quasi Contracts” (LSA-C.C. Art. 2293 et seq.) or as to a refund of expenses incurred in the preservation of property (LSA-C.C. Art. 2314). Nor do we find it necessary to engage in a prolonged or detailed discussion of the authorities cited, pro and con, on these issues.
Cited by defendant are these cases: Fox v. Sloo, 10 La.Ann. 11; Conrad v. Burbank, 25 La.Ann. 112; O’Hara v. Krantz, 26 La.Ann. 504; Succession of Mulligan v. Kenny, 34 La.Ann. 50; Moreira et al. v. Schwan, 113 La. 643, 37 So. 542.
These authorities are without application to the issues presented in the instant case as they involve either facts clearly distinguishable or partition or other forms of accounting procedures, as will be disclosed by a mere reading thereof, as is the additionally-cited case of Sharp et al. v. Zeller et al., 114 La. 549, 38 So. 449, 451, which, however, points up the equity of the situation from plaintiffs’ standpoint. The court, in the course of its opinion in that case, stated:
“The right of the joint owner in possession to be reimbursed necessary expenses for the preservation of the common property is well settled. Fuselier v. Lacour, 3 La.Ann. 162; Smith v. Wilson, 10 La.Ann. 255.
“The liability of the co-owner not in possession to refund his part of necessary expenditures arises ex aequo et bono. Fuselier v. Lacour, 3 La.Ann. 163. In Conrad v. Burbank, 25 La.Ann. 112, the defendant was charged with rents and credited with disbursements for necessary repairs and taxes paid; but his claim for commissions and premiums of insurance covering only his own interest was rejected. In the late case of Moreira v. Schwan, 113 La. 643, 37 South. 542, we held that defendant joint owner in possession was entitled to be reimbursed for taxes and insurance paid on the property. The question of necessary expenditures for repairs was not involved in that suit; but we think that they stand on the same footing. * * *.
“Admitting that defendant was a possessor in bad faith as to the interest of plaintiffs in the property, he is entitled to necessary expenses for the preservation of the property. Civ. Code, art. 2314; Wood’s Heirs v. Nicholls, 33 La.Ann. 751.

*579 “The judgment allowed defendant $61124 for necessary repairs. There is nothing to rebut the testimony of defendant that such repairs were necessary to preserve the property and keep the house in a tenantable condition. Plaintiffs cannot receive the benefit of the rents and at the same time repudiate the expenditures which made their production possible.” (Emphasis supplied.)
The court, in a prior decision, in Toler v. Bunch, 34 La.Ann. 997, had held, citing Becnel v. Becnel, 23 La.Ann. 150; Balfour’s Heirs v. Balfour, 33 La.Ann. 297, that a co-owner is liable for improvements made by the other proprietor where such improvements constituted necessary repairs for the preservation of the property.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed be, and it is, hereby annulled, avoided, reversed and set aside, and the exception of no cause of action overruled; and, accordingly, this case is remanded to the Honorable, Ninth Judicial District Court in and for Rapides Parish, Louisiana, for further proceedings in accordance with law and consistent with the views herein expressed. The defendant-appellee is assessed with the cost of this appeal; all other costs are to await final disposition of the case.
Reversed and remanded.
GLADNEY, J., dissents and assigns written reasons.