490 So.2d 330 (1986)
Barbara Foisy LOVELL
v.
Archie James LOVELL.
No. 85 CA 0389.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied July 15, 1986.
J.P. Morella, Patterson, for plaintiff.
Allen A. McElroy, Jr., Berwick, for defendant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
This is a suit to partition community property pursuant to LSA-R.S. 9:2801. Archie and Barbara Foisy Lovell were married on March 4, 1961. A petition for divorce was filed on March 10, 1981, and a judgment of divorce was signed on October 12, 1981. A petition to partition the community of acquets and gains was filed by Archie Lovell on July 15, 1981. Both parties filed sworn detailed descriptive lists of community assets and liabilities. Trial on the merits was held February 17, 1984, and judgment partitioning the community of acquets and gains was rendered on November *331 27, 1984. From that judgment, both parties have appealed.
Mr. Lovell essentially raises three assignments of error for our review: 1) the trial court erred in its partitioning of the community when it assigned a monetary value to the Schlumberger profit-sharing plan in which Mr. Lovell was given sole interest, as a result of which Mr. Lovell did not receive property of an equal net value as the law requires; 2) the trial court erred in not granting him reimbursement for the entire amount of payments he made on certain community obligations; and 3) the trial court erred in not allowing him a credit for Mrs. Lovell's use of the family home and automobile for the interval between dissolution and partition of the community. Mrs. Lovell answered the appeal alleging as her only assignment of error the manner in which reimbursement was made to Mr. Lovell for his payment of community debts with separate funds.
For the following assigned reasons, we reverse and remand.

PROFIT-SHARING PLAN
Among the assets held in the name of Mr. Lovell was a profit-sharing plan with his employer, Schlumberger Offshore Services. Under the rationale of T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975), the rights of Mr. Lovell in that profit-sharing plan were community property. By virtue of his length of service with Schlumberger, he had become fully vested in this plan. In the partition of the effects of the marital community the trial court allotted the profit-sharing plan entirely to Mr. Lovell and set the value of the rights of Mr. Lovell in the plan as of the date of the termination of the community at $128,697.35. We have come to the conclusion that the trial court was in error in attempting to assign a value at the time of dissolution of community to the profit-sharing plan while Mr. Lovell lived and was still employed, and the plan remained in full effect.
T.L. James & Co., supra, at 851, on rehearing, contains the following passage, which applies to present facts:
... The value of the right to share in the retirement and profit-sharing funds is an incorporeal, movable right. When acquired during the existence of a marriage, the right-to-share is a community asset which, at the dissolution of the community, must be so classified-even though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, 174-75 (1956). When a community is dissolved, the employee's spouse is thus entitled to be recognized as the owner of one-half the value of the right-to-share, insofar as attributable to the contributions paid into the fund as deferred compensation to the employee during the existence of the community (i.e., even though it may not by the contract be payable at that time).2 Id.; Laffitte v. Laffitte, 253 So.2d 120 (La.App.2d Cir. 1971), noted 33 La.L.Rev. 222-23 (1973)....
2 Although at the time of dissolution of the community, the right to share in the funds' proceeds may be a mere expectancy without marketable order or redeemable cash value, the wage earner and his spouse may at that time agree upon its value and partition it, along with the other assets of the community. In practice, usually this is done, after a separation or divorce, by the wage earner paying his spouse for the discounted value of her half of this community asset, either by cash or by the spouse receiving in exchange an agreed-upon equivalent share of the other community assets. See Comment, 25 La.L.Rev. 108, 140-41 (1964).
In the present case, however, the husband did not settle with his first wife for her interest in the contractual right to receive these proceeds eventually; and therefore, to the extent of the value of the contribution of the first community in these funds, the first community's interest remains an unpartitioned assets of that community. See Langlinais v. David, 289 So.2d 343 (La.App.3d Cir.1974).
*332 It should be noted that footnote 2 supports our conclusion as it indicates that the parties to a community property settlement usually enter into a voluntary partition of the community effects in which they allot the wage earner the right to receive the funds with the non-wage earner being paid the discounted value of his or her half of the community asset.
In the present case, there is no voluntary partition of community effects. The partition is judicial. It is, as is stated in T.J. James & Co., impossible, and to some extent, unjust to attempt to fix the value of a profit-sharing plan while the wage-earner remains employed, as the plan does not have a real value to holder until maturity. The following passage in Sims v. Sims, 358 So.2d 919, at 923 (La.1978), which treated the rights of the spouses under a United States government retirement plan upon dissolution of the community, is relevant:
At the time of the dissolution of the community, as well as of the present date (at which, we are informed by the briefs, the husband is still employed as an air traffic controller), the community interest in the retirement plan has no immediate redeemable cash value. Until the employee is separated from the service, dies, retires, or becomes disabled, no value can be fixed upon his right to receive an annuity or upon lump-sum payments or other benefits to be paid on his account. (Footnote omitted)
Similarly to Sims, until Mr. Lovell becomes separated from his employment, dies, retires, or becomes disabled, no value can be set upon his rights in the Schlumberger profit-sharing plan as he can receive nothing from it and cannot use it. The value cannot be set with a degree of precision consonant with the requirements imposed upon us as a court of justice. Further, the courts are constrained by T.L. James & Co., and Sims not to attempt to set a present value upon the profit-sharing plan. The trial court made a conscientious and thoughtful effort to do so. However, this, we must hold, was error, and must be reversed.
The proper method of partition of a retirement plan (and hence by analogy from T.L. James & Co., a profit-sharing plan) is set forth in Sims at 358 So.2d 924. We reverse the holding of the trial court. As the partition of the entire community is affected by the value sought to be placed upon the profit-sharing plan by the trial court, the entire judgment of partition of the community must be reversed and set aside.

REIMBURSEMENT FOR MORTGAGE PAYMENTS
In this assignment of error, the appellant contends that the trial court erred in failing to award to him credit for the entire amount of mortgage payments made by him with his separate funds.
Mr. Lovell was awarded a credit of $3,844.62 for amounts paid on community debts, namely a home loan and car loan, after dissolution of the community. The trial court however denied any recovery for the amount of the payment pertaining to interest or insurance, limiting recovery solely to the amounts by which the principal balances were reduced.
As the trial court correctly held, a spouse is entitled to a credit only for the amount by which the principal balance of a community loan is reduced when the payment of that loan is made a part of the alimony or support obligation. Cookmeyer v. Cookmeyer, 354 So.2d 686 (La.App. 4th Cir. 1978); Lowe v. Lowe, 463 So.2d 755 (La. App. 5th Cir.1985). See also, Miller v. Miller, 405 So.2d 564 (La.App. 3rd Cir. 1981). In both the judgment on rule prior to separation and the judgment of divorce, Mr. Lovell was ordered to pay "as additional alimony" the monthly home mortgage note and the car note. Therefore, to reimburse Mr. Lovell for principal alone was correct. This assignment of error has no merit.

USE OF THE COMMUNITY HOME AND AUTOMOBILE
In this assignment of error, Mr. Lovell contends that it was error for the trial *333 court not to allow him credit for Mrs. Lovell's use of the community home and automobile granted to her by the judgments rendered herein. However, we note that the appellant raises this issue for the first time on appeal. Although Mr. Lovell may be entitled to a credit for the use of this community property by Mrs. Lovell, the record before us is devoid of any evidence as to the amounts for which he may be reimbursed. Patin v. Patin, 462 So.2d 1356 (La.App. 3rd Cir.1985), writ denied, 446 So.2d 470 (La.1985). See also, Michel v. Michel, 484 So.2d 829 (La.App. 1st Cir. 1986). Therefore, we cannot consider this assignment of error. LSA-C.C.P. art. 2164.

REIMBURSEMENT OF COMMUNITY OBLIGATIONS WITH SEPARATE FUNDS
In answer to this appeal, Barbara Lovell assigns as error the trial court's awarding to Archie Lovell reimbursement for community debts which he paid with separate funds, in addition to the home loan and car loan set forth above. Specifically, Mrs. Lovell contends that by granting her former husband reimbursement totalling $18,204.09 out of community funds the trial court failed to apply LSA-C.C. art. 2365.
LSA-C.C. art. 2365 provides that when separate property of one spouse has been used to satisfy a community obligation upon termination of the community regime, that spouse will be entitled to reimbursement for one-half of that amount. The net result of the trial court's action is that Mr. Lovell received a one-half reimbursement upon dissolution as provided by LSA-C.C. art. 2365 since he was owner of one-half of the total community of acquets and gains which was partitioned.
This assignment of error has no merit.
Accordingly, the judgment of the trial court is reversed, and the case remanded for a revision of the partition of the community in accordance with this opinion, all costs to await final determination of the matter.
REVERSED AND REMANDED.